**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **Z.S., L.S.-1, and L.S.-2**

**No. 21-0486** (Hardy County 20-JA-23, 20-JA-24, and 20-JA-25)

**MEMORANDUM DECISION**

Petitioner Father S.S., by counsel Jeremy B. Cooper, appeals the Circuit Court of Hardy County's May 21, 2021, order terminating his parental rights to Z.S., L.S-1 and L.S.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and James Wegman, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Marla Zelene Harman, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights to Z.S., L.S.-1, and L.S.-2 instead of granting him a less-restrictive alternative disposition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2020, the DHHR filed a child abuse and neglect petition against petitioner and the mother due to allegations of drug abuse, domestic violence, and deplorable home conditions. The DHHR alleged that, after receiving a referral regarding allegations of abuse, a Child Protective Services ("CPS") worker interviewed the children, who reported that petitioner and the mother frequently fought and that petitioner drank excessively. The oldest child, M.S.,[2] then sixteen years

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as L.S.-1 and L.S.-2, respectively, throughout this memorandum decision.

[2]M.S. is not at issue on appeal. Petitioner specifically omits M.S. in his assignment of error on appeal as only his custodial rights to that child were terminated below.

1

old, reported that petitioner was abusive towards the mother and that he threw objects at the mother. The CPS worker implemented a safety plan wherein petitioner and the mother agreed to complete four sessions of safety services. However, after the safety plan was initiated, the CPS worker received reports that the parents continued to argue, that the parents were addicted to pain pills and abused the drugs in front of the children, that petitioner left the children in the care of a registered sex offender, that petitioner rammed his vehicle into the mother's vehicle while the children were inside the mother's vehicle, and that the mother left the young children home alone. Based on these facts, the DHHR alleged that the children were abused and neglected.

The circuit court held an adjudicatory hearing in June of 2020. Petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated him as an abusing parent, and granted him an improvement period. As part of the terms and conditions of the improvement period, petitioner was required to submit to random drug screens, participate in parenting and adult life skills classes, obtain suitable housing, and participate in domestic violence classes.

Petitioner was initially compliant with services. However, during his first unsupervised visit with the children, petitioner took the children to see the mother against court order. Shortly thereafter, the DHHR filed a motion to terminate petitioner's improvement period, noting that he permitted contact between the children and the mother against court order, took shots of alcohol during virtual visits with the children, failed to maintain a suitable residence, and failed to comply with services. At a hearing held in November of 2020, petitioner admitted that he took the children to see their mother but denied that he drank alcohol during virtual visits. Petitioner also acknowledged that he had not yet found suitable housing for the children. The circuit court deferred ruling on the DHHR's motion and continued the proceedings.

The circuit court held a status hearing in December of 2020. The DHHR withdrew its motion to terminate petitioner's improvement period based on steps he had taken to comply with services. Petitioner finally admitted that he was drinking alcohol during a virtual visit with his children and advised the circuit court that he had suitable housing lined up. The circuit court continued petitioner's improvement period but informed him that he was "on a short leash" and had been given "all kinds of chances" to correct his behavior by that point in the proceedings.

In February of 2021, the circuit court held another status hearing. The circuit court was advised that petitioner had recently tested positive for methamphetamine, had not obtained suitable housing, and had been posting sexually explicit and inappropriate content on Facebook despite being "friends" with his children on the social media platform. Petitioner denied using methamphetamine but admitted that he did not have suitable housing for the children. The circuit court set the matter for disposition.

The circuit court held the dispositional hearing in May of 2021. A CPS worker testified that petitioner had been inconsistent with services throughout the proceedings. The worker noted that, earlier in the proceedings, petitioner took the children to see the mother, against court order, and consumed alcohol during a virtual visit with the children. The worker stated that petitioner had not been participating in random drug screens and had completed only fourteen of thirty-two scheduled domestic violence classes. The worker further noted that, during a virtual visit with the

2

children in December of 2020, petitioner had the television playing loudly in the background, and the children could not hear him clearly due to the noise. The worker expressed concern that, after having not visited with the children in quite some time, petitioner failed to engage with them and give them his full attention. The worker testified that petitioner tested positive for methamphetamine and alcohol in January of 2021 and posted inappropriate content on his Facebook page, which his children could see. The CPS worker acknowledged that petitioner completed parenting and adult life skills classes but characterized his participation in the improvement period as noncompliant on the whole.

An employee from the day report center testified that, as a part of petitioner's improvement period, he was required to submit to random drug screens and participate in domestic violence classes. The employee testified that petitioner ceased participating in domestic violence classes in January of 2021 and did not finish the curriculum. The employee further testified that petitioner missed several drug screens and tested positive for alcohol in December of 2020 and methamphetamine and alcohol in January of 2021. The employee stated that her office personnel "went above and beyond for" petitioner and "worked random odd hours when we were testing him" to accommodate his schedule but that petitioner "quit cooperating with our services and with our random screens."

Petitioner presented the testimony of his service provider, who stated that petitioner successfully completed parenting and adult life skills classes. The provider testified that petitioner was engaged, actively participated, gave examples, listened, and conversed with her during the classes. The provider further testified that petitioner obtained housing in Virginia.

Petitioner testified and requested an extension to his improvement period. Petitioner stated that he obtained employment in Virginia in January or February 2021 and suitable housing in Virginia as of March of 2021. Petitioner testified that he had not been able to regularly participate in random drug screens or domestic violence classes due to his place of employment, which required a two-hour, one way commute from his home. Petitioner testified that he successfully completed parenting and adult life skills classes and had a strong bond with the children. Regarding his last virtual visit with the children, petitioner denied that he was watching television as testified to by the CPS worker. Petitioner admitted that another individual had been watching television but that petitioner "never left the phone or . . . put my attention to the TV." Petitioner also denied abusing methamphetamine. Petitioner admitted that his two adult siblings, both of whom had intellectual disabilities, resided with him in his Virginia home and occupied the two extra bedrooms, leaving no bedrooms for the children. When questioned where the children would sleep if they were returned to his care, petitioner stated that he was "working" on it and had another house lined up that could accommodate the children.

By order entered on May 21, 2021, the circuit court denied petitioner's request for an extension of his improvement period and terminated his parental rights. According to the circuit court, petitioner was unwilling or unable to provide adequately for the children's needs and "exercised incredibly poor judgment during the pendency of this case." The circuit court found that petitioner was unable to demonstrate that he "can assimilate and apply parenting skills necessary to ensure the safety of the children." The circuit court noted, for example, that one of the issues leading to the petition's filing was domestic violence and drug abuse, but petitioner was

noncompliant with his improvement period by only sporadically participating in drug screens and domestic violence classes. The circuit court noted that petitioner failed to maintain sobriety, took shots of alcohol during a virtual visit with the children, and failed to comply with the court's orders by taking the children to visit with their mother. Further, the circuit court found that petitioner could not provide a sustainable safe home for the children and failed to address the issue of adequate housing. While petitioner procured a three bedroom home late in the proceedings, it was inadequate because the bedrooms were occupied by petitioner and two of his adult siblings, leaving no room for the three children. Based on the foregoing, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's May 21, 2021, dispositional order terminating his parental rights to Z.S., L.S.-1, and L.S.-2.[3]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights instead of employing a less-restrictive alternative disposition. While petitioner acknowledges his imperfect record in this case, he argues that there was clear evidence that he would be able to make progress during a post-dispositional improvement period or had shown enough "likelihood to correct the issues to justify a 'Disposition 5.'" Petitioner contends that the circuit court gave insufficient weight to evidence presented in petitioner's favor and focused on irrelevant factors. Petitioner argues that he completed parenting and adult life skills classes, obtained housing, obtained employment, and was submitting to drug screens through his employer. Additionally, he participated in therapy, medication management, domestic violence classes, and random drug screens until his employment prohibited him from further participation. According to petitioner, he also shared a strong bond with the children. Petitioner identified family members who could assist with childcare and acknowledged his mistakes during the proceedings. On this record,

---

[3]The mother's parental rights were terminated below. The permanency plan for Z.S., L.S.-1, and L.S.-2 is adoption by their foster family. The permanency plan for M.S. is to reside in a transitional living facility as she has reached the age of majority.

petitioner avers that the circuit erred in finding that there was no reasonable likelihood that he could correct the conditions of abuse and neglect in the near future. To the contrary, petitioner states that "because he has an economic imperative to work, [he] is simply presently unable to fully care for his children." Therefore, according to petitioner, termination was the improper remedy, and he requests that this Court vacate the dispositional order and remand the matter with instructions to impose a less-restrictive disposition. Having reviewed the record, we find no error.

Under West Virginia Code § 49-4-610(3)(D), in order to obtain a post-dispositional improvement period after having already been granted an improvement period, a parent must "demonstrate[] that since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and "that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." On appeal, petitioner does not acknowledge this heightened burden. Instead, he simply argues that his alleged compliance with his post-adjudicatory improvement period was sufficient to obtain a second improvement period. We disagree. Here, in the year since the proceedings commenced, petitioner failed to obtain suitable housing that would accommodate the children, failed to complete domestic violence classes, failed to consistently submit to drug screens, and tested positive for methamphetamine at the end of his improvement period. According to West Virginia Code § 49-4-610(4)(A), when a parent is granted an improvement period "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." Petitioner failed to fulfill this responsibility by creating a work schedule that was not conducive to participating in services and ultimately reunification by taking no affirmative steps to work with the DHHR to facilitate any changes in scheduling services.

Based on the foregoing, we find that petitioner has failed to satisfy the higher burden necessary to obtain a second improvement period. Further, we note that the circuit court was vested with discretion in ruling on petitioner's motion for a second improvement period, and we find no abuse of that discretion. *See* Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."); *see also In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."). As such, petitioner is entitled to no relief.

The evidence, as set forth above, likewise supports the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. As noted above, petitioner was provided an improvement period with services; however, petitioner failed to meaningfully comply with services and tested positive for methamphetamine several months into his improvement period. Petitioner also failed to complete his domestic violence courses and failed to obtain suitable

housing for the children. Petitioner exercised poor judgment during the case and failed to demonstrate that he could apply the parenting skills necessary to ensure the safety of the children. Accordingly, we find that the circuit court's determination that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future is supported by the evidence.

To the extent petitioner argues that he should have been given more time to comply with services, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child[ren] will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part (citation omitted). Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the foregoing, it is clear that petitioner was unable to solve the problems of abuse or neglect on his own or with the assistance of the DHHR and its service providers, thus, termination of his parental rights was not error.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 21, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton